In re Tom R. WATKINS, Praying for a Writ of Mandamus.

No. 17391.

United States Court of Appeals Fifth Circuit.

Nov. 24, 1959.

Thomas D. Bourdeaux, Meridian, Miss., for petitioner.

John H. Holloman, Columbus, Miss., J. C. Wilbourn, Meridian, Miss., for respondent.

Before RIVES, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is an application for writ of mandamus to require the District Judge in a suit on promissory notes and an open account to vacate an order referring the whole cause to a Master to "hear and determine all of the facts and law involved from which the Court may then determine whether it should call to its aid a jury in disposing of the case." The reference was to enable the Master "to report his findings of the facts and con-· clusions of law upon which the rights of the parties can be fairly determined" since the Court considered that "the complications and conflicts are such that it would be exceedingly difficult for a jury of laymen as an original proposition, to understand and reach a correct conclusion, without expert analysis."

Initially this Court suggested, Ex parte Watkins, 5 Cir., 1958, 260 F.2d 548, that by appropriate supplemental proceedings below, the parties and the District Judge explore the availablity of an interlocutory appeal under the recent amendments, 28 U.S.C.A. § 1292(b). The Judge's Certificate [1] was inadequate in substance to show a probable dispositive question. It is important, though, in giving corroboration to Petitioner's apprehensions that the reference is preliminary to a denial by the District Court either of a trial by jury at all or an effective trial by jury of his defenses and counterclaims for money damages.

■ We are fully mindful that the writ of mandamus is truly an extraordinary one to be used under the most guarded circumstances [2] lest it become a

1. In the Certificate the Judge states that by such a reference "the parties could present all of their testimony and record evidence without the necessity of repeating in trial before the Court. Of course the Court could, if it saw fit, call a jury to pass on nontechnical facts," and then concluded: "Hence, the primary question here is: Do the pleadings require * * a jury trial? * * * I, therefore, cer-

tify· this condition to the Court of Appeals * * *, with the request it decide whether this case must, under the Constitution, be tried to a jury."

2. We are exacting in requiring a clear showing of an abuse of discretion. See e. g., American Monorail Co. v. Parks-Cramer Co., 4 Cir., 1957, 245 F.2d 739; In re Turpentine & Rosin Factors, 5 Cir., 1956, 238 F.2d 458; Ex parte

substitute for appeal or interlocutory appeal and a likely frustrating interruption of trials. However, "supervisory control of the District Courts * * * is necessary to proper judicial administration" and the "All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus * * *." La Buy v. Howes Leather Co., 1956, 352 U.S. 249, 259–260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290, 299.

■■ A reference to a Master, of course, is to be judged by F.R.Civ.P. 53 (b), 28 U.S.C.A., and the principles embodied in that declaration. "A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it." Mere error, however, in the application of these standards would not justify the intervention of mandamus. For the "All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power' " and " * * * should be resorted to only in extreme cases" where the reference to a Master is "so palpably improper" that "the rules have been practically nullified." La Buy v. Howes Leather Co., 1956, 352 U.S. 249, 256–258, 77 S.Ct. 309, 314, 1 L.Ed.2d 290, 297, 298.

In assaying an application for mandamus, we must first determine whether there was an error and if so, whether in context it had those qualities the law characterizes as an abuse of discretion. The starting point is then the rule allowing reference in jury trials "only when the issues are complicated."

Watkins is a cotton ginner who had frequent business dealings with Wesson Oil & Snowdrift Company who operated a cotton seed oil mill. Wesson Oil bought almost all of the cotton seed of Watkins' gin and advanced money to Watkins for ginning operations and other purposes. This litigation was initiated by Wesson Oil against Watkins on three basic claims.

(1) A promissory note, dated July 1, 1955, face amount $15,264.11, plus interest and attorneys fees. Watkins denied liability on the note on the ground that he signed it on the representations of Wesson Oil's agent (Travis) that the company would loan Watkins that amount to finance operations for the 1955 ginning season which loan Watkins says was never made. Wesson Oil denied this.

(2) An open account, unpaid balance of $2,401.74. Watkins admits liability on the account except for a consignment of poison in the amount of $2,204 which Watkins denies ever receiving.

(3) A promissory note, dated August 31, 1954, face amount $41,938.93, with an unpaid balance of $5,000 plus interest and attorneys fees. Watkins asserts that he signed the note in blank on the representation of Travis (Wesson Oil's agent) that the note would be filled in with the correct amount of Watkins' open account indebtedness. Wesson Oil denied this. The correct amount of the indebtedness is in dispute with Watkins claiming that he should have received a credit of $73,989.22 rather than $48,449.-20 for 1952 cotton seed sales. Watkins counterclaimed for the difference in the two amounts.

In addition, Watkins counterclaimed for an amount unconnected with any of the plaintiff's claims. The counterclaim was for improper conversion of insurance proceeds totaling $14,437.50 received by Wesson Oil as a result of fire destruction of the Brooksville cotton gin. Watkins claims he purchased this gin from John J. Cochran subject to an "open-end" mortgage held by Wesson Oil the balance of which was represented by plaintiff's agent (Travis) to be $25,000 but which was in fact approximately

Pharma-Craft Corp., 5 Cir., 1956, 236 F. 2d 911; In re First National Bank of Montgomery, 5 Cir., 1956, 233 F.2d 876;

Ex parte Chas. Pfizer & Co., 5 Cir., 1955, 225 F.2d 720.

$108,000. Watkins claims he is entitled to all insurance proceeds received by Wesson Oil in excess of $25,000 because of the misrepresentation by Travis that the indebtedness was $25,000.

Watkins made a timely demand for a jury trial.

The reference to a Master came about this way. Wesson Oil, on the ground that the allegations of fraud by its agent Travis had converted the case to one in equity, sought an order for trial by the Court instead of to a jury. Alternative to that was the motion for a reference to a Master. The hearing brought out, as the record here reflects, that extensive pretrial discovery had taken place. It is only fair to Wesson Oil to state that with respect to the matter of the correct amount of the 1952 cotton seed sales (Item (3) above) there was much confusion and uncertainty. Detailed examination of Wesson Oil's books and oral testimony of its employees having knowledge, reflected the credit actually given. Apparently there were a great number of books and records to substantiate this figure. The confusion, however, came about primarily from the absence of records, loss and destruction of some in two fires, the informal records kept by Watkins, and the lack of, or doubt in, papers or records sustaining the figure claimed by him ($73,989.22). This figure was based upon a memorandum prepared by Wesson Oil's agent Travis who was acting as Watkins' bookkeeper apparently on the side. Other books and records had been assembled and examined concerning the actual total amount of the indebtedness of John J. Cochran under the "open-end" mortgage to plaintiff on the Brooksville gin. But this is unimportant. For Watkins concedes that the "open-end" mortgage indebtedness of Cochran was substantially in excess of $25,000. He claims the right to the surplus of insurance proceeds ($14,437.50) because of misrepresentation by Wesson Oil's agent Travis that the indebtedness was $25,000.

From a careful consideration of this record, we think that the District Court became so preoccupied with the confusion and uncertainty as to the amount of proper credit for the 1952 cotton seed sales (Item (3) above), that he did not take proper notice that this accounting uncertainty did not infect the numerous other critical and decisive issues, each of which was of a kind traditionally within the competence of a jury for resolution. For example, in Item (3) above, the crucial question is whether Travis, the agent, stated, as Watkins alleged, that the note would be filled in later in the correct amount of the open account balance. This will be a swearing contest between Travis and Watkins. The amount of that indebtedness—and hence the accounting problem—arises only in the event the trier determines that Watkins is right and Wesson Oil wrong. On Item (1) above, the question—again a contest between Travis and Watkins—is whether this agent agreed to advance the amount for 1955 operations, and whether it was done. No accounting problem arises there at all. On Item (2) the sole question is whether the poisons were delivered on consignment to Watkins. The record shows no defense other than nondelivery. If not delivered, there is no liability whatsoever. With respect to the surplus insurance proceeds, the sole question is whether the agent Travis represented that the open-end mortgage indebtedness was $25,000. Consequently, the only question of accounting is the amount of the 1952 cotton seed sales.

This analysis demonstrates, of course, that the case does involve three main claims and one independent counterclaim with a number of subsidiary factual-legal issues of varying decisiveness. But in this day to say that that makes a case a "complicated" one would be to turn the tables on the rule and make trial by reference the usual, and trial by court or jury the exceptional. The minimum required is a demonstration that over and beyond a mere numerical quantitative analysis, the case is intrinsically complex.

On that score the showing is inadequate. Basically the case turns on the credibility of Watkins versus Travis with possible factual-legal questions on the extent to which action, representations, etc. of Travis may bind Wesson Oil. These are issues of a kind traditionally for judge or jury as fact finder.

A reference, of course, may be an effective pretrial tool preliminary to trial before court or jury and considerable latitude must be accorded the trial judge in its use for that purpose. Matter of Peterson, 1920, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919. Seldom will such preliminary actions of the trial court, even though erroneous, amount to an abuse of discretion reviewable by mandamus. But here the consequences are such that, in our view, the actions of the District Judge transcend a mere error to constitute a nullification of the rule for trial by reference as the exceptional case. Only one issue was intrinsically complex—the amount of cotton seed sales for 1952. But the accounting-credibility problem inherent in it—and which may well have justified a reference to ascertain the facts incident to it—are hardly sufficient to drag down with it all of the other issues which both numerically and qualitatively were of more significance and not dependent on this limited one. Even the trial judge's indicated purpose to defer, pending the master's report, decision on the question of Watkins' right to jury trial and the extent to which the report might be received as evidence before the jury, F.R.Civ.P. 53(b), seems to work against his action. For the consequence is to subject the parties to a full preliminary trial with the prospect that most, if not all, would be tried a second time before court or jury, or both. The remedy of an appeal from the final judgment would scarcely be adequate, and if successful in overturning an adverse judgment flowing from the reference, would, at the price of a third trial, demonstrate, as presently contended, that only one was permitted.

A careful consideration of the record is convincing that there was no justification for the comprehensive reference of the whole case to a Master whether such hearing and report were ultimately to be preliminary only, or would amount finally to the trial. By its nature and consequence this procedure nullifies the right to an effective trial before a constitutional court.[3] To effectively secure that right the unauthorized order of reference must be vacated.

Writ granted.

---

3. See Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 560, 79 S.Ct. 948, 3 L.Ed.2d 988.