350 F.2d 806
 Howard H. RAPP, Administrator of the Estate of Richard F.
Zeller, Deceased, et al., Petitioners,
v.
Honorable Francis L. VAN DUSEN et al., Respondent.
Roberta BARRACK, Administratrix, et al., Leach Biernbaum and
Dewey Hoffman, Extrs., et al., Doris A. Laister,
Extx., et al., Petitioners,
v.
Honorable Francis L. VAN DUSEN et sl., Respondent.
Sidney W. POPKIN et al., Petitioners,
v.
Honorable Francis L. VAN DUSEN, United States District Judge
for the Eastern District of Pennsylvania, Respondent.
 Nos. 14927, 14929 and 14934.
 United States Court of Appeals Third Circuit.
 Argued Sept. 17, 1964, Reargued May 26, 1965.
Decided Aug. 10, 1965.
 
 Ralph Earle, II, Morgan, Lewis & Bockius, Seymour I. Toll, Richter, Lord, Toll & Cavanaugh, Philadelphia, Pa. (Drusen, Evans & Byrne, Philadelphia, Pa., Kreindler & Kreindler, New York, City, Freedman, Borowsky & Lorry, John R. McConnell, Gregory M. Harvey, Charles A. Lord, T. E. Byrne, Jr., Philadelphia, Pa., Lee S. Kreindler, New York City, Abram P. Piwosky, David M. Hass, Milton M. Borowsky, Philadelphia, Pa., on the brief), for petitioners in all cases.
 William T. Coleman, Jr., Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa. (Robert W. Maris, Philadelphia, Pa., on the brief), for respondent in all cases.
 Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 FREEDMAN, Circuit Judge.
 
 
 1
 These three petitions for writs of mandamus or prohibition, or both, were argued together and will be disposed of in one opinion.
 
 
 2
 On October 4, 1960, an Electra airplane crashed into Boston Harbor a few seconds after takeoff on its scheduled flight to Philadelphia. Numerous suits for the deaths and injuries which resulted were brought in the United States District Courts for the Eastern District of Pennsylvania and the District of Massachusetts. The various defendants in these proceedings were Eastern Airlines, Inc., the owner and operator of the plane, Lockheed Aircraft Corp., the manufacturer of the plane, General Motors Corporation, the maker of its engines, and the United States of America, which had general supervisory authority.[1]
 
 
 3
 The death and injury of Pennsylvania residents in the Massachusetts plane crash presented the increasingly familiar problem of the applicable rule of damages. Pennsylvania's Wrongful Death and Survival Acts[2] are compensatory, without limitation on the amount of recovery, whereas the Massachusetts Death Act[3] is based on the degree of culpability and fixes recovery at a minimum of $2,000 and a maximum of $20,000.
 
 
 4
 All of the actions pending in the Eastern District of Pennsylvania were assigned to Judge Francis L. Van Dusen. On motion of the defendants under 28 U.S.C. 404(a) Judge Van Dusen ordered the actions transferred to the District of Massachusetts. Popkin v. Eastern Air Lines, Inc., 204 F.Supp. 426 (E.D.Pa.1962).
 
 
 5
 The plaintiffs sought review of the transfer order by petitions in this court for mandamus or prohibition[4] directing Judge Van Dusen to vacate and set aside his order. We ordered the respondent Judge to file separate answers or one consolidated answer to the petitions, and granted leave to the defendants to intervene.[5] An answer was filed by Judge Van Dusen, and after argument we held that the Judge did not have power to transfer the death actions. The basis of the decision was that the plaintiffs were not qualified to sue in Massachusetts as personal representatives at the time the death actions were brought in Pennsylvania. The actions therefore were held not to be such as 'might have been brought' (28 U.S.C. 1404(a)) in Massachusetts and hence did not meet the requirement for transfer there.[6] Barrack v. Van Dusen, 309 F.2d 953 (3 Cir. 1963).
 
 
 6
 The respondents in this court, including Judge Van Dusen, then obtained certiorari (Van Dusen, United States District Judge, et al. v. Barrack, Administratrix, et al., 372 U.S. 964, 83 S.Ct. 1088, 10 L.Ed.2d 128 (1963)), and after argument the Supreme Court reversed the judgment of this court on the ground that the limiting words of 1404(a) did not apply to incapacity to sue under the law of the State of the transferee forum. It went on to hold that a transfer of the action to Massachusetts would work no change in the applicable substantive law and accordingly the Massachusetts District Court would be required to apply the damage rule which would prevail under Pennsylvania's conflict of laws doctrine.[7] Because this newly announced principle might affect a number of elements relevant to the order of transfer, such as the feasibility of consolidating the Pennsylvania and Massachusetts cases, the need for witnesses on various elements of damage and their convenience, and the appropriateness of the trial of a diversity case in a forum familiar with the applicable state law, the Supreme Court remanded the cause to the District Court so that it might reconsider the motion to transfer. Van Dusen, United States District Judge et al. v. Barrack, Administratrix et al., 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).
 
 
 7
 On remand to the District Court the plaintiffs moved that Judge Van Dusen disqualify himself under 28 U.S.C. 455[8] from sitting in any further proceedings in the pending actions. Judge Van Dusen denied the motion. Once again plaintiffs seek review by a petition for mandamus or prohibition, or both, in which the Judge is the sole respondent.
 
 
 8
 The parties have assumed the availability of mandamus for review of Judge Van Dusen's order. Although we held in Green v. Murphy, 259 F.2d 591 (3 Cir. 1958), that mandamus will not lie for review of the denial of a claim of personal bias and prejudice made under 28 U.S.C. 144, we believe that mandamus is the appropriate remedy here. The Green case is inapplicable for two reasons. There the interlocutory order was one which later would be reviewable on appeal from the final judgment, whereas, if the present cases are transferred there will be no final judgment in this circuit and any review here must be interlocutory.[9] Secondly, the present case is before us on a claim of disqualification resulting from matters which were brought into existence by order of this court. This we have the duty to correct and we do so in the exercise of our supervisory authority and in aid of our appellate jurisdiction, both well recognized grounds for mandamus.[10]
 
 
 9
 We trun then to the claims of the petitions. There is no dispute regarding the facts, which Judge Van Dusen with commendable forthrightness spread upon the record after a review of his files. The Judge had designated the attorneys for defendants as his counsel, had consulted with them concerning his answer to the petitions for mandamus and had made suggestions for change in their draft.[11] He later joined as a petitioner in the application to the Supreme Court for certiorari. Petitioners assert that the Judge is disqualified from acting further in these cases because of the 'letter' and 'spirit' of 28 U.S.C. 455, which provides: 'Any * * * judge of the United States shall disqualify himself in any case in which he * * * has been of counsel * * * or is so related to or connected with any party to his attorney as to render it improper, in his opinion, for him to sit on the trial * * * or other proceeding therein.'
 
 
 10
 Petitioners make no claim that Judge Van Dusen had any connection with any of the parties to the action. It is asserted, however, that his giving of advice to his own counsel, who also were attorneys for the defendants, and perhaps also his relationship to his counsel while they were attorneys for the defendants, amounted to his being 'of counsel', or at least to his having had a relationship to or connection with attorneys for the parties defendant within the meaning of the statute.
 
 
 11
 On behalf of the respondent it is argued that petitioners may not be heard to complain because it is they who made the Judge the sole respondent and so cast on him the need to answer their petitions, a need which, because of the many cases involved, made it inevitable that he be represented by counsel who were already familiar with the litigation. Similarly, it is said that the petitioners could have avoided making the Judge the respondent in mandamus by seeking review of the order of transfer under the Interlocutory Appeals Act, 28 U.S.C. 1292(b).
 
 
 12
 The conclusion we have reached makes it unnecessary to decide whether Judge Van Dusen's conduct falls within the prohibition of 28 U.S.C. 455. For in any case, in view of the existing circumstances in this case, which have led us to adopt a new procedure in mandamus, he should not participate in the further course of this litigation. A review of the evolution of mandamus makes it clear that the continuance of the same form of practice in all mandamus cases is undesirable. Cases where the relief sought is directed against the judge individually on grounds extrinsic to the merits of his decision must be distinguished from those in which the relief sought is a determination that the decision was intrinsically erronous.
 
 
 13
 Mandamus had its origin in England in the control assumed by the King's judges over the autonomous organs of local government,[12] usually to remedy the loss of some position or office.[13] By the time of Blackstone the writ was in wide use in these areas and in the supervision by the Court of King's Bench over inferior courts,[14] usually in matters more akin to judicial administration than to judicial review.[15] In these circumstances, therefore, no difficulty arose in requiring a judge to make return to the application for the writ.
 
 
 14
 In the United States the use of mandamus has continually expanded.[16] It was early given a statutory basis by the All Writs Act,[17] which now authorizes the courts to issue 'all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' Under the statute the 'traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'[18] It was accordingly said to be limited to cases where no discretion was involved.[19] Its modern use has been extended to include cases of clear abuse of discretion,[20] as well as the 'supervisory control of the District Courts by by the Courts of Appeals (which) is necessary to proper judicial administration in the federal system.'[21] Under this principle it has served increasingly to afford relief from the hardships of the final judgment rule by permitting review of extraordinary interlocutory orders,[22] such as orders of transfer under 28 U.S.C. 1404(a).[23]
 
 
 15
 Throughout this long development of mandamus no procedural distinction was made between those cases where an attack is made on the merits of a judicial act and those rare instances where the claim is directed against the judge himself. It was in accordance with this practice[24] that the plaintiffs in their mandamus petitions named Judge Van Dusen as sole respondent, although they sought only judicial review of his order of transfer. We too followed the general practice by affirmatively commanding the respondent Judge to answer the petitions. This practice, however, is undesirable.[25] For the proper administration of justice requires of a judge not only actual impartiality, but also the appearance of a detached impartiality. Litigants are entitled, moreover, to a judge whose unconscious responses in the litigation may be struck only in the observing presence of all parties and their counsel. This right is impaired when a party is required to meet in his opponent an advocate who has already acted as the judge's counsel in the same litigation.
 
 
 16
 It follows, therefore, that where the purpose of mandamus is to secure what is in effect an interlocutory review of the intrinsic merits of a judicial act, the procedure should not be the same as that which is appropriate for complaint against a judge's conduct which is extrinsic to the merits of a decision. We shall therefore modify our practice so that in cases such as that which arose here, where mandamus was sought to review an order of transfer, the judge below, although named as a respondent,[26] shall be deemed a nominal party only and the prevailing parties in the challenged decision shall be deemed to be respondents and permitted to answer the petition. It is they who should have the opportunity and the responsibility to vindicate the decision in their favor. The judge, although served with a copy of the petition, shall not be required to file an answer and his failure to controvert any of the allegations of fact in the petition shall not be deemed an admission of their truth. It is appropriate that his original opinion be considered as his answer to the contentions of the petition and if no opinion already appears of record, or if he decides to supplement his opinion, he may file in the mandamus proceeding in this court a memorandum in support and explanation of his challenged action.
 
 
 17
 This procedure will make it unnecessary for us to issue any preliminary orders to the judge on the filing of a petition for mandamus. It will keep him from becoming entangled as an active party to litigation in which his role is judicial and in which he has no personal interest. It will make it unnecessary for a judge to retain counsel and thus will avoid burdening him with the undesirable alternatives of acting as his own counsel, or seeking outside counsel to serve him with or without charge, or obtaining the services of counsel for the successful parties who continue to serve their clients by acting as his nominal counsel. A judge will thus be guarded from engaging in ex parte discussions with counsel or aligning himself even temporarily with one side in pending litigation.
 
 
 18
 There will, of course, remain the rare occasion in which the ground for the application is extrinsic to the merits of a decision. Examples of this class of cases are Davis v. Board of School Commissioners of Mobile County, Ala., 318 F.2d 63 (5 Cir. 1963), where a judge was required to rule promptly on a motion for preliminary injunction; and Hall v. West, 335 F.2d 481 (5 Cir. 1964), where a recalcitrant judge was ordered to proceed pursuant to the 1954 desegregation order of the Supreme Court. In this class of cases the judge as the respondent may, without being required to do so, file an answer and contest the petition and where appropriate, intervention by interested parties will be allowed.
 
 
 19
 In view of the extent of relief now afforded by the Interlocutory Appeals Act, 28 U.S.C. 1292(b), and the principle which ordinarily limits the writ of mandamus to cases where no other remedy is available, petitions for the writ should allege that an unsuccessful request was made for certification under 1292(b), or why such an application was inappropriate in the circumstances.[27]
 
 
 20
 In the present case Judge Van Dusen's conduct as a respondent on the review of his transfer order, although occasioned by the order we entered, went beyond our requirement when he employed as his counsel the attorneys for the successful parties below to prepare his answer and then consulted with them in the absence of their adversaries. Thus, set in motion by our order, there resulted the very involvement which our new procedure is designed to prevent. There is no reason why the beneficial purpose of this procedure should not extend to the present cases.
 
 
 21
 The dissenting opinions require that we emphasize what is the essence of our decision. We believe it is not necessary to reach the question whether the case falls within 455, because the district judge's action followed from the order which we expressly directed to him. While we did not require him to obtain any counsel, especially the attorneys for the defendants, nevertheless, this train of events with its undesirable consequences had its origin in our order. To safeguard litigants as well as the trial judge from similar embarrassment we have adopted a procedure for the future. This procedure which will safeguard the administration of justice against even the appearance of loss of impartiality is peculiarly appropriate for application in the present case. These litigants, in whose case the problem arose and the solution was designed, should be included in its benefits. No harm or injustice is visited thereby on any of the parties. No right of the district judge is retrospectively impaired; he has no vested right to sit in this case. This court, which had the power to direct him to answer the original mandamus application, has equal power to neutralize its effect on these litigants when it clouds for them the appearance of the purity of the administration of justice.
 
 
 22
 We have in no way enlarged the right of review. All that we have done is to decide that wherever the right to mandamus exists-- whatever its scope may be and however it may be limited by the Interlocutory Appeals Act-- the procedure to be followed should avoid entangling the judge as a party litigant unless the complaint is against the judge for conduct which is extrinsic to the merits of his decision.
 
 
 23
 We therefore conclude that Judge Van Dusen should not sit in the further or sideration of the motions to transfer or in any subsequent phases of this litigation. We know that Judge Van Dusen will fully effectuate these views without the necessity of our entering any formal order. Petitioners may, however, apply to this court for a formal order directing the issuance of the writ of mandamus if the need therefor should arise.
 
 
 24
 KALODNER, Circuit Judge (concurring).
 
 
 25
 I am in accord with the holding 'that Judge Van Dusen should not sit in the further consideration of the motions to transfer or in any other subsequent phases of this litigation.'
 
 
 26
 I premise my accord on my view that Section 455, 28 U.S.C.A. is a bar to Judge Van Dusen's participation in any further proceedings in the above captioned cases, by reason of its command that a judge 'shall disqualify himself in any case in which he * * * has been of counsel * * *.'
 
 
 27
 The sum of my position is that the involvement of Judge Van Dusen in the 1962 mandamus proceedings was of such significant substance as to bring it within in the sweep of an 'of counsel' relationship.
 
 
 28
 On this score, I must immediately declare that the involvement referred to was not per se violative of, or offensive to, the most exacting standard of judicial conduct. He acted in obedience to the express command of this Court in making Answer to the petitions for mandamus or writ of prohibition and it was undemably his duty in doing so to set his best foot forward in apprising us of the legal premise of his then challenged action in ordering the transfers of the pending suits to the District of Massachusetts. His ex parte counselling with the attorneys he had selected to represent him in the proceedings and in the preparation of the Answers, and his specific 'suggested inclusions' in the attorneys' draft of the Answers, were well within the realm of permissible and reasonable action.
 
 
 29
 It is meet that Judge Van Dusen's role in the preparation of the Answers be considered in the light of his exemplary, conscientious devotion and idefatigable dedication to the performance of his judicial junctions, and his admirable passion for perfection.
 
 
 30
 It cannot be gainsaid, however, that it is the hard fact that Judge Van Dusen in practical effect, albeit not by design, acted as 'of counsel' in his earlier detailed participation in the preparation of the Answers in the 1962 mandamus proceedings. That being so, he was required to disqualify himself from participation in subsequent phases of this litigation under the earlier cited mandatory provisions of Section 455.
 
 
 31
 McAUGHLIN, Circuit Judge (dissenting).
 
 
 32
 The above opinion of the majority is another ineffectual attempt at smoothing out this contratemps. Despite some textual changes the central situation remains the same. We created it by, as the opinion states, 'affirmatively commanding the respondent Judge to answer the petitions.' The same opinion now condemns that action of ours as 'undesirable'. We made the judge a party to the litigation. He was thus forced by this court to see to it that his view as the sitting judge was properly presented to this tribunal. As between the primary litigants he admittedly was and is strictly non-partisan. What he did and all that he did was give us his decisional thinking. We take that, find that he followed our instructions, re-assert his complete impartiality and then oust him from the suits under a practice which we are restricting to those instances where a judge for one reason or another is allegedly biased.
 
 
 33
 In this mess of our own making it is shabby treatment to penalize the fine judge concerned for conscientiously obeying our order. No amount of soft language can cover this up or excuse it. It is a little bit late to try to make amends but at the very least we should discharge the rule forthwith without any restrictions whatsoever and leaving the judge completely free to choose his own course.
 
 
 34
 HASTIE, Circuit Judge (dissenting).
 
 
 35
 As the majority candidly concede, mandamus is being used here to secure interlocutory review of the merits of a decision, as distinguished from the correction of any abuse of authority or other grossly improper conduct by a judge. More specifically, we have been asked to find, and the majority to find, error in the respondent's order denying a request that he disqualify himself from sitting any longer in certain pending litigation.
 
 
 36
 It is to be emphasized at the outset that the 'error' found by this court is no arbitrary or scandalous disregard of any plain duty to withdraw from the case in question. Indeed, no one contends that any such misconduct is involved here. The court does not even decide, as the petitioners have urged it to do, that the respondent has incorrectly interpreted the provision of section 455 of the Judicial Code which requires a judge to disqualify himself in any case 'in which he * * * has been of counsel'.[1] The court decides merely that the respondent erred in not recusing himself because by stepping aside he would have avoided even any possible appearance of partiality which may have been created by his communication with defense counsel while those lawyers were representing him in opposing another petition for mandamus filed against him by the present petitioners in the earlier course of this litigation.
 
 
 37
 Thus, since the majority do not decide that the respondent's failure to disqualify himself violates any statute or rule of common law, this court must be deciding that the respondent's exercise of discretion, which led him to a considered decision as to the wisdom and desirability of his continuing to hear a law suit, must be overruled in deference to our appellate judgment that it would have been wiser and would have looked better for the respondent to have reached a contrary conclusion.
 
 
 38
 Even if this were a duly perfected interlocutory appeal, I would consider it unwise and undesirable thus to overrule a district judge's rational exercise of discretion concerning his own continuation in a case. But this is not an interlocutory appeal. It is a petition for mandamus used as a substitute for an appeal. And, until this case, I had heretofore thought it clear that mandamus could not thus be substituted for an appeal.
 
 
 39
 Properly used, mandamus against a judge is essentially different from appeal from his decision. The differences are both formal and functional. In form mandamus is a distinct ancillary proceeding against the judge himself. Its essential role is to correct improper conduct and failure to be guided by limitations on judicial power. Occasional uses of mandamus against a judge which do not respect these limited functions of the writ are, in my view, misuses of the writ. They are anomalous and do not justify new anomalies. The Supreme Court has recently reminded us, not for the first time, that 'extraordinary writs are 'reserved for really extraordinary causes,' Ex parte Fahey, 332 U.S. 258, 260 (67 S.Ct. 1558, 91 L.Ed. 2041) (1947), and then only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its autority when it is its duty to do so.' Roche v. Evaporated Milk Assn., 319 U.S. 21, 26 (63 S.Ct. 938, 87 L.Ed. 1185) (1943).' Platt v. Minnesota Mining & Mfg. Co., 1964, 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674.
 
 
 40
 My confidence that this is no proper case for mandamus is increased by the fact that the majority opinion recognizes that such a proceeding as this is 'in effect an interlocutory review of the intrinsic merits of a judicial act', though called 'mandamus'. The new procedure proposed for cases of this sort, with the trial judge treated as merely a 'nominal' party and the original litigants contesting the merits of a disputed decision in a reviewing court, is itself a mechanics of appellate review as contrasted with the characteristic mode of mandamus. Moreover, it is proposed that a proceeding like this shall serve only as a judicially devised expedient of last resort for parties who have tried unsuccessfully to obtain appellate review under the procedure provided by Congress in the Interlocutory Appeals Act, 28 U.S.C. 1292(b), to define and limit out power to grant interlocutory appeals. In these circumstances, I fear we shall be more vulnerable to the charge of refusing to respect the statutory limits of our own power to review than the present respondent is to any charge of exceeding his authority by continuing to preside over this case below.
 
 
 41
 I would dismiss the present petition and permit the principal litigation, already inordinately delayed by years of preliminary disputation over where it shall be tried and by whom, to proceed, hopefully, at an accelerated place. I interpose no objection to the revised procedure for cases of this kind as announced in the opinion of the court, because that procedure seems unobjectionable for appellate practice and in my view such cases as this present unwarranted appeals rather than true original actions of mandamus.
 
 
 42
 I am authorized to state that Judge STALEY joins in this dissent.
 
 
 
 [1]
 Fifty-five actions involving 28 plaintiffs were filed in the Eastern District of Pennsylvania; 114 actions were filed in the District of Massachusetts. See Popkin v. Eastern Air Lines, Inc., 204 F.Supp. 426, 427, n. 1 (E.D.Pa.1962)
 
 
 [2]
 The Pennsylvania Wrongful Death Act is contained in the Act of April 15, 1851, P.L. 669, 19, Act of April 26, 1885, P.L. 309, as amended, Act of May 13, 1927, P.L. 992 (12 Purdon Pa.St.Ann. 1601-1604)
 The Pennsylvania Survival Act is contained in the Fiduciaries Act of April 18, 1949, P.L. 512, 601-605 (20 Purdon Pa.St.Ann. 320.601-320.605).
 
 
 [3]
 Mass.Ann.Laws, C. 229, 2 (Supp.1961)
 
 
 [4]
 In some of the petitions the writ sought is described simply as mandamus, in others as mandamus or prohibition, and in some as mandamus or prohibition, or both. We shall refer to mandamus as including prohibition wherever appropriate
 
 
 [5]
 The order read, in part:
 'It is ORDERED that:
 '1. The respondent, the Honorable Francis L. Van Dusen, file answers to the petitions on or before June 28, 1962, and if he deems it desirable, file on consolidated answer to all of the petitions. * * *'
 
 
 [6]
 In the light of this, the court left it open for Judge Van Dusen to reconsider the transfer of the two personal injury suits
 
 
 [7]
 Judge Van Dusen had said that he found it unnecessary to decide what was the Pennsylvania rule. Popkin v. Eastern Air Lines, Inc., 204 F.Supp. 426, 433 (E.D.Pa.1962). For a very recent Pennsylvania decision on the conflict of laws problem, see Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), reversing the decision of the lower court which is cited at n. 49 in Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)
 
 
 [8]
 They made no claim of personal bias or prejudice against ehm and did not invoke the remedy provided by 28 U.S.C. 144, which provides, in part: 'Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.'
 
 
 [9]
 See Paramount Pectures, Inc. v. Rodney, 186 F.2d 111, 116 (3 Cir. 1951), cert. denied, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951); Pennsylvania Turnpike Commission v. Welsh, 188 F.2d 447, 449, n. 2 (3 Cir. 1951); In re Josephson, 218 F.2d 174 (1. Cir. 1954)
 
 
 [10]
 See La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); United States v. United States Dist. Ct. for So. Dist. of N.Y., 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351 (1947)
 
 
 [11]
 Judge Van Dusen expressly disassociated himself from the argument of the intervenors that mandamus should be refused because the petitioners had an adequate remedy by appeal under the Interlocutory Appeals Act, 28 U.S.C. 1292(b). See Barrack v. Van Dusen, 309 F.2d 953, 956, especially at n. 5 (3 Cir. 1963)
 
 
 [12]
 See 10 Holdsworth, A. History of English Law (1938), pp. 155, et seq., 243, et seq.; Weintraub, English Origins of Judicial Review by Prerogative Writ: Certiorari and Mandamus, 6 N.Y.Law Forum 478 (1963)
 
 
 [13]
 Thus, in Bagg's Case, 11 Co.Rep. 93b, 98a, 77 Eng.Rep. 1271, 1277-78 (1915), Coke said: '* * * It was resolved, that to this Court of King's Bench belongs authority, not only to correct errors in judicial proceedings, but other errors and misdemeanors extrajudicial, tending to the breach of peace, or oppression of the subjects, or to the raising of faction, controversy, debate, or to any manner of misgovernment: so that no wrong or injury, either public or private, can be done but that it shall be (here) reformed or punished by due course of law.'
 The breadth of the jurisdiction thus asserted is shown by Lord Ellesmer's criticism that Coke thereby 'hath as much as insinuated that this Court is all-sufficient in itself to manage the State.' 77 Eng.Rep. at 1278 n. (B), quoted in Weintraub, cited supra, n. 12, p. 490.
 
 
 [14]
 'A mandamus * * * lies to compel the admission or restoration of the party applying to any office or franchise of a public nature, whether spiritual or temporal; to academical degrees; to the use of a meeting-house, etc.: it lies for the production, inspection, or delivery of public books and papers; for the surrender of the regalia of a corporation; to oblige bodies corporate to affix their common seal; to compel the holding of a court: and for an infinite number of other purposes, which it is impossible to recite minutely. But at present we are more particular to remark, that it issues to the judges of any inferior court, commanding them to do justice according to the powers of their office, whenever the same is delayed. For it is the peculiar business of the court of king's bench to superintend all inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the crown or legislature have invested them: and this, not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice. A mandamus may therefore be had to the courts of the city of London, to enter up judgment; to the spiritual courts to grant an administration, to swear a church-warden, and the like.' 3 Blackstone's Commentaries, pp. * 110 - * 111
 
 
 [15]
 See 2 Spelling, Injunctions and Other Extraordinary Remedies (2d ed. 1901), 1383
 
 
 [16]
 For its use-- and the opposition to its use-- in the colonial period, see Goodman, Mandamus in the Colonies-- The Rise of the Superintending Power of American Courts, 1 Am.J.Legal Hist. 308 (1957); 2 Am.J.Legal Hist. 1 (1958)
 
 
 [17]
 The provision originated in the Judiciary Act of 1789, c. 20, 13, 14 (1 Stat. 81), and is now contained in substance in the 1948 revision of the Judicial Code: 28 U.S.C. 1651
 
 
 [18]
 Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). See also United States Alkali Export Ass'n, Inc. v. United States, 325 U.S. 196, 202, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945)
 
 
 [19]
 Life & Fire Insurance Company of New York v. Adams, 9 Pet. (34 U.S.) 571, 9 L.Ed. 233 (1835). See High Extraordinary Remedies (3d ed. 1896), 56
 
 
 [20]
 See In re Watkins, 271 F.2d 771, 76 A.L.R.2d 1113 (5 Cir. 1959); Hartley Pen Co. v. U.S. District Court, 287 F.2d 324 (9 Cir. 1961)
 
 
 [21]
 La Buy v. Howes Leather Co., 352 U.S. 249, 259-260, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957)
 
 
 [22]
 See Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 375-378 (1961); Note, Federal Court Review by Extraordinary Writ: A Clogged Safety Valve in the Final Judgment Rule, 63 Yale L.J. 105 (1953); Note, The Writ of Mandamus: A Possible Answer to the Final Judgment Rule, 50 Col.L.Rev. 1102 (1950)
 
 
 [23]
 Swindell-Dressler Corporation v. Dumbauld, 308 F.2d 267 (3 Cir. 1962); Barrack v. Van Dusen, 309 F.2d 953 (3 Cir. 1963); Van Dusen, U.S. Dist. Judge v. Barrack, 376 U.S. 612, 615 n. 3, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). See also cases collected in 6 Moore, Federal Practice (1953), P54.10 (4), n. 61
 
 
 [24]
 See, e.g., Swindell-Dressler Corporation v. Dumbauld, 308 F.2d 267 (3 Cir. 1962)
 
 
 [25]
 The Supreme Court recognized in Exparte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947), that mandamus has 'the unfortunate consequence of making a judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him.'
 
 
 [26]
 Rule 20 of the proposed Federal Rules of Appellate Procedure would continue to make the judge a respondent in all applications for mandamus or prohibition. It would deem all parties below other than the petitioner to be respondents, and would permit a joint answer by all the respondents. It would require the Court of Appeals to order the judge as well as other respondents to answer the petition within a fixed time, but would authorize the judge, if he does not desire to contest the petition, to so advise the clerk and parties by letter, in which event the petition would not be taken as admitted by the judge's failure to answer. The Advisory Committee's note states that these provisions are based on Supreme Court Rule 31. See 34 F.R.D. 263, 294-295 (1964)
 In the First Circuit the practice is to caption the application 'In re (or In the Matter of)', followed by the petitioner's name. The judge is designated as a respondent in all mandamus cases, but the successful parties are permitted to intervene and to file an answer instead of the respondent judge. See In re Union Leader Corp., 292 F.2d 381, 384 (1 Cir. 1961). This practice is not without its problems. See Ibid., at n. 4.
 To the effect that the judge should not be named as a respondent, see Gresham v. Superior Court, 44 Cal.App.2d 664, 112 P.2d 965, 967 (1941); 6 Moore, Federal Practice (1953), P54.10 (2), pp. 72-3.
 
 
 [27]
 See Ex parte Watkins, 260 F.2d 548 (5 Cir. 1958); Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 382 (1961)
 
 
 [1]
 Certainly, it would require a dubious and far fetched construction of the phrase 'of counsel' to make it cover the situation of a judge who, after being ordered to answer a petition for mandamus, discusses his answer with attorneys who have undertaken to represent him. He is certainly not acting 'of counsel' for any other party to the litigation. Apparently, the concept is that in conferring with his lawyers he is 'of counsel' for himself, a sort of lawyers' lawyer-client. I would not expect so unlikely an interpretation of section 455 even to occur to a judge seeking conscientiously to be guided by that section. And certainly the failure of a judge to reason so oddly is no proper occasion for coercing him by an extraordinary writ designed to redress narrowly limited categories of exceptional wrongs and plainly improper conduct