Victor J. VEATCH, Plaintiff,

v.

Stanley R. RESOR, Secretary of the
Army, Defendant.

Civ. A. No. 9556.

United States District Court
D. Colorado.

April 18, 1967.

Brenman, Ciancio, Rossman & Baum,
Martin Zerobnick, Arthur L. Fine, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty. for
Dist. of Colorado, Denver, Colo., for defendant.

DOYLE, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiff, a discharged employee at
Fitzsimons General Hospital, seeks review of the proceedings which preceded
his discharge, together with mandatory
orders directed to the Secretary of the
Army. The action arises pursuant to
Title 28 U.S.C. § 1361 and 5 U.S.C. §
1009. Plaintiff has exhausted his administrative remedies. He has had an
extensive hearing before a trial examiner
and has appealed through the Surgeon
General and finally to the Secretary of
the Army.

Defendant was charged with the violation of a regulation which declares
that:

"* * *, employees are not permitted to make irresponsible, false, or
defamatory statements for the express
purpose of injuring others or which
attack, without foundation, the integrity of an organization or that of other
individuals. * * *"

The specific allegation was that he
had written a certain letter to the Commissioner of Internal Revenue in Washington, D. C. In this letter he had dis-

cussed at length the difficulties which he had experienced in resolving questions in his mind as to the tax consequences of his having to eat and pay for certain meals on the job. He sought a ruling "so that we would know just what we can claim on our income tax." In the course of his inquiry he made certain derogatory references to personnel at the hospital, and these formed the basis for the action which was taken.[1] Strange as it may seem, this letter came to the attention of the authorities at Fitzsimons Hospital through the plaintiff. He appended it to a grievance which he filed on May 18, 1963. His purpose in this instance was to evidence his attempts to get information on the deductibility of meals.

By letter dated August 19, 1963, plaintiff was notified by the Commanding General that removal proceedings were being instituted against him. On August 29, 1963, plaintiff replied to this notification and set forth in this reply the reasons for the statements which he had made in his letter to the Commissioner. On September 24, 1963, the Chief of Civilian Personnel determined that plaintiff should be removed effective on November 12, 1963. This order was subsequently affirmed by the Commanding General. Meanwhile, however, a lengthy hearing was conducted by an examiner. Numerous witnesses testified and a great number of exhibits were introduced. This hearing, or inquiry, was conducted on December 19 and 20, 1963. The examiner, in a lengthy opinion, recommended the removal. After that the case was appealed to the Surgeon General who affirmed plaintiff's removal as did the Secretary of the Army. The cause was filed in this court on December 10, 1965.

A reference in plaintiff's letter mentions that plaintiff had been ordered removed on a prior occasion and that this order had been reversed by the Surgeon General.

There was considerable delay between the last administrative act, the affirmance by defendant, and the filing of this suit. This is explained in affidavits filed in this court on the basis that plaintiff experienced difficulty in obtaining

---

1. The relevant portions of the letter are as follows:

"Over a year ago I wrote you a letter and have been trying to get the information from the Army but the Washington office and Denver said I should get. (sic) But the whole thing boils down to reprisal because some person or persons wrote letters and General Bolander and Colonel Schafli were fined and I got blamed for it unofficially. I was fired and was reinstated by the Surgeon General.

"Do you (sic) that I have been accused of not being loyal to Fitzsimons and here are three copies of recommendations that Mr. R. G. Crockett, Chief of Personnel, says that Lt. Col. K. V. Buck wrote. Col. Buck told me herself that she did not want me around and that I would get no information for Internal Revenue about my taxes from the Food Service Division. She is my boss.

"M/Sgt. Elmer A. H. Barttelbort, Col. Buck's Chief Mess Stewart (sic), said it would be incriminating for him to give me any information about my official hours and the meals I am charged for that I don't get.

"The Internal Revenue Department is vulnerable to corruption but most employees are honest. Sgt. Barttelbort said that he could get the local Internal Revenue office to go along with him. I doubt that.

\* \* \* \* \*

"There is a direct conflict here between those who believe that the individual should be prevented from helping himself in order that the government could step in as a father to protect him. We employees can be trapped through no fault of our own because the Food Service Division has a dual set of rules. We must be sure to be currently conversant with not only the pertinent Internal Revenue Code sections but we must also read over the pertinent regulations, then have the Army and Civilian Personnel tell us at Fitzsimons that the Internal Revenue laws do not apply to us.

\* \* \* \* \*

"The Food Service Division at Fitzsimons does not believe in the dignity or sanctity of the human or the home life of the employees."

the services of a lawyer to handle the court case. He had been represented by counsel different from the present ones at his hearing.

Several legal questions are presented. These include:

1. Whether the cause should be dismissed based on plaintiff's delay in commencing this action.

2. Whether the procedures followed were valid and adequate.

3. Whether the record reveals that plaintiff has suffered a substantial injury.

## I.

### Whether plaintiff should be barred by laches.

As noted above, there was a delay of something less than fourteen months between the termination of the administrative proceedings and the instituting of suit by plaintiff. On the other hand, plaintiff has submitted his affidavit stating that after the final administrative decision rendered in October, 1964, he attempted without success to have his attorney at the hearing continue with his case in the courts; thereafter he sought other counsel, and was unable to come up with the fee which was demanded. On April 6, 1965, he contacted present counsel who agreed to take the case. The affidavit of plaintiff is supplemented by an affidavit from his present lawyer stating that the case required some four months to prepare, and that he was responsible for some of the delay due to the press of other business.

The Supreme Court considered this question in the case of United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650. The plaintiff

there was removed from his position as Superintendent of Crater Lake National Park. As a result of a delay of twenty months before commencing suit it was held that he was barred. It was pointed out that there is an important policy consideration which demands prompt action by a dismissed employee. This is so that the service will not be disturbed more than necessary and so as to avoid the payment of two salaries in the event the dismissal is later voided. Lane has been followed in subsequent decisions of the Supreme Court and also by lower federal courts in several decisions.[2]

■ *Lane* and the other cases establish general equitable guidelines for the application of the laches doctrine such as whether the service will be disrupted, whether there is a threat of payment of two salaries, and whether the plaintiff was aware of his rights, and was responsible for the delay, or has a cogent explanation. Thus each case will turn on its own peculiarities. Applying these to the case at bar it is noted that the delay is substantial and the explanations are not too persuasive. We would be perhaps justified in applying the doctrine of laches here. In plaintiff's favor is the fact that there was a change of lawyers and consequent delay in the preparation of the case for filing. The closeness of the question and the general desirability of reaching the merits rather than disposing of it on a basis such as laches, persuades us that the action should not be barred on this ground.

## II.

### Whether the defendant's procedural rights have been violated.

Judicial review in a case such as this is necessarily limited in scope. Often-

2. E. G., Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921); Nicholas v. United States, 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921); Kessler v. General Services Administration, 2 Cir. 1964, 341 F.2d 275; Chiriaco v. United States, 5 Cir. 1964, 339 F.2d 588; Carney v. Cates, 1961, 109 U.S.App.D.C. 377, 288 F.2d 161; Chappelle v. Sharpe, 1961, 112 U.S.App.D.C. 182, 301 F.2d 506, cert. denied 370 U.S. 903, 82 S.Ct. 1250, 8 L.Ed. 2d 400 (1962); Davis v. Tennessee Valley Authority, N.D.Ala.1962, 214 F.Supp. 229, aff'd 5 Cir. 1963, 313 F.2d 959, cert. denied 375 U.S. 818, 84 S.Ct. 53, 11 L.Ed. 2d 52 (1963).

times the courts speak of public employment as a privilege rather than a right whereby the hearing to which the employee is entitled is something less than a trial type hearing. See Bailey v. Richardson, 1950, 86 U.S.App.D.C. 248, 182 F.2d 46, affirmed 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951). See also Angilly v. United States, S.D.N.Y. 1952, 105 F.Supp. 257. Some courts have limited the review to an inquiry: 1) whether the removal violated some statutory provision; and 2) whether the procedures established were followed.[3]

Other courts have inquired as to whether the administrative decision was supported by substantial evidence or was arbitrary or capricious.[4] These standards are included within the Administrative Procedure Act.[5] Whether this act applies to a review such as the present one is questionable and unnecessary to a determination of the case at bar since judged by any of the mentioned standards the plaintiff's discharge must be upheld.

■■ The statute which governs is the "Lloyd-LaFollette Act," Title 5 U.S.C. § 652. This provides that no person in the classified service shall be removed or suspended "except for such cause as will promote the efficiency of such service and for reasons given in writing." The Army's Civilian Personnel Regulation C2 sets forth grounds for removal "to promote the efficiency of the service." Plaintiff's removal was effected under 2–4j of this regulation which, as has been previously noted, condemns irresponsible, false *or* defamatory statements. Plaintiff maintains that statements made must be irresponsible, false *and* defamatory; however, we are of the opinion that the words are to be read separately and we are also of the opinion that the terms employed are not unconstitutionally vague.

■ The procedural steps were taken pursuant to Civilian Personnel Regulation S1, section 2 of which contains the specific requirements. This regulation requires that the plaintiff be given a specific notification and a right to reply. Also, his removal must be evidenced by written notice. Moreover, he has a right to appeal to the Surgeon General or to the Civil Service Commission and a right to a hearing. We have reviewed the record and are of the opinion that there was substantial compliance with Civilian Personnel Regulation S1; indeed, it would appear that the various steps were meticulously observed. There was an appeal to the Surgeon General. A full hearing was provided. Plaintiff was represented by able counsel, and finally, the case was reviewed by the Department of the Army. The admission in evidence of the prior record was not erroneous. Plaintiff's letter, which was the basis for the action taken, brought this incident into the present hearing. It is true that the plaintiff was exonerated in the prior hearing, but he was given a warning by the Surgeon General to refrain from making irresponsible, false, or defamatory statements attacking other employees or the installation itself. The trial examiner could not under the circumstances have avoided considering this prior charge. It was an inseparable part of the matters before him.

### III.

The basis for plaintiff's contention that the Department decision discharging him was wrong on its merits, is

---

3. Jenkins v. Macy, 8 Cir. 1966, 357 F.2d 62; Baum v. Zuckert, 6 Cir. 1965, 342 F.2d 145; Brancadora v. Federal Nat. Mortgage Ass'n, 9 Cir. 1965, 344 F.2d 933; Chiriaco v. United States, 5 Cir. 1964, 339 F.2d 588; Seebach v. Cullen, 9 Cir. 1964, 338 F.2d 663; Whiting v. Campbell, 5 Cir. 1960, 275 F.2d 905; Levy v. Woods, 1948, 84 U.S.App.D.C. 138, 171 F.2d 145; Angilly v. United States, S.D.N.Y.1952, 105 F.Supp. 257.

4. Dabney v. Freeman, 1965, 123 U.S.App. D.C. 166, 358 F.2d 533; Pelicone v. Hodges, 1963, 116 U.S.App.D.C. 32, 320 F.2d 754; Camero v. United States, 1965, 170 Ct.Cl. 490, 345 F.2d 798.

5. Title 5 U.S.C. § 1009.

summarized in the following statement from the brief filed in his behalf:

"It is clear that the regulation does not contemplate punishing every G. I. or government employee who ventures the opinion that he is in a 'chicken outfit', although such a statement might be broadly viewed as attacking the integrity of his organization. * *

"Putting the argument rather bluntly, it seems downright silly for the Government to contend that the efficiency of the Department of the Army or Fitzsimons General Hospital was significantly impaired by the statements made by Veatch in the [Commissioner] Caplin letter. On the contrary, it seems that the quality of judgment shown by the Army in pursuing so trivial a matter through such an extensive proceeding merely to 'get' one of their mess attendants is hardly consistent with an attitude of promoting the efficiency of the service.

"The state of mind of one who makes a statement prohibited by the regulation must be one of malice or willful intent."

There is no genuine dispute as to whether the plaintiff made the statement and there can be little question but that it was in violation of the regulation. Plaintiff was not officially charged with the responsibility of commenting on any official action, and certainly he was not obliged to express himself in a letter to the Commissioner of Internal Revenue. His comments were loose, irresponsible and defamatory. Furthermore, the record establishes beyond question that they were ill-founded. We do not agree with the efforts of counsel for plaintiff to minimize the effect of these statements. A government agency, including a military post, need not tolerate the type of action that is here shown to have occurred by ignoring it or by taking the position that it carries no impact. Conduct such at this has a tendency to be disruptive and, therefore, even though the repercussions might have been disproportionately great, we are of the opin-

ion that the authorities were justified in the action which they took.

Finally, plaintiff had a great sufficiency of due process, procedural and substantive. Accordingly, the relief prayed for must be denied. It is, therefore,

Ordered that the complaint be dismissed.