**Albert H. CARTER, Plaintiff-Appellant,**

**v.**

**Robert SEAMANS, Jr., as Secretary of the Air Force, Defendant-Appellee.**

No. 27359

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

May 8, 1969.

Albert H. Carter, pro se.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

This appeal is taken from the judgment of the court below dismissing the appellant's action without prejudice. We affirm.

Appellant was discharged from the United States Air Force under conditions other than honorable. In his complaint he asks for a declaratory judgment that the discharge is a nullity and to order the Secretary of the Air Force to reinstate him and to award him all of the back pay, incentive pay, allowances, and other benefits accruing from the date of discharge. He also requests that his military records be corrected to reflect promotion at regular intervals so that he presently holds the rank of colonel.

Appellant is also the plaintiff in an action in the United States Court of Claims, instituted prior to this action, in which he seeks the same relief. That court has stayed all proceedings pending disposition of the instant case.

In a carefully reasoned and well-written opinion, as yet unreported and attached hereto as an appendix to this decision, the district court has declined jurisdiction of this case, dismissing it without prejudice and deferring to the Court of Claims. We find no abuse of the district court's discretion in so acting. The judgment below is affirmed.

Affirmed.

### APPENDIX

### MEMORANDUM OF THE COURT
### NOVEMBER 15, 1968

As Amended On Motion for Reconsideration Dec. 23, 1968.

*Memorandum:*

The Plaintiff, Albert H. Carter, was discharged from the United States "under other than honorable conditions"[1] on December 29, 1960. His discharge was purportedly effected pursuant to the provisions of 10 U.S.C. Sec. 1163(a) as implemented by Air Force Regulation 36–2. At the time of the discharge, Plaintiff held the rank of Captain and he had over three years of active commissioned service. Contending that his discharge was in violation of his constitutional rights and/or was contrary to law, and hence a legal nullity, Carter brought this action against the Secretary of the Air Force in order to have it set aside. The specific relief sought includes, inter alia, a declaratory judgment that the discharge was illegal and invalid and that Plaintiff has continued to hold his office and commission at all times since December 29, 1960. Carter also asks the court to find that he is entitled to have his military records corrected so as to reflect that he has been promoted at regular intervals and that he now holds the rank of Colonel. Finally, he seeks an injunction restraining the defendant from further withholding all pay and allowances he would have earned during the relevant period and which may accrue in the future. It has been estimated that the claim, if paid in full, would involve approximately $135,000.

It is noteworthy that Carter is the plaintiff in an action in the United States Court of Claims styled Albert H. Carter v. United States which was filed on April 14, 1966. The action in the Court of Claims arose out of the same factual situation as the case at bar and it seeks similar relief. On April 26, 1968, the seven judges of the court, in a per curiam order, denied the government's motion to dismiss and ordered, sua sponte, that all proceedings be stayed pending this court's disposition of the instant case.

The parties have entered into an extensive stipulation of facts and the case is now before the court for decision on cross motions for summary judgment.

The defendant has launched a pervasive attack on the jurisdiction of this court to determine the case at bar. Accordingly, the court is duty bound to re-

---

1. In Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852 (1961), the various types of discharges were described and characterized as follows:

"The type of discharge issued serves as a judgment upon the quality of the service rendered by the dischargee. There are five types of military discharge (other than for physical or mental disability): (1) honorable, (2) general (under honorable conditions), (3) undesirable (the equivalent for officers is a discharge 'under other than honorable conditions'), (4) bad conduct (never issued to officers), and (5) dishonorable (a 'dismissal' for officers). * * * Types (4) and (5) are issued only upon sentence by court-martial; the others follow administrative action. Since about 90% of all discharges issued are honorable, a discharge of that type is commonly regarded as indicating acceptable, rather than exemplary service. In consequence, anything less than an honorable discharge is viewed as derogatory, and inevitably stigmatizes the recipient. * * *" Id. at 853 n. 1.

solve the jurisdictional issues before discussing the merits.

Defendant's first line of attack is founded on the contention that the instant action is, in substance and effect, a suit against the United States over which this court lacks jurisdiction because of the absence of consent to be sued.

■ In determining whether an action comes within the purview of the sovereign immunity doctrine, the critical consideration is not the identity of the parties, but rather the result of the judgment or decrees which might be entered. Minnesota v. Hitchcock, 185 U.S. 373, 387, 22 S.Ct. 650, 46 L.Ed. 954 (1902). The applicable principle was concisely stated in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), where the court wrote:

> "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' * * * or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' "

Id. at 620, 83 S.Ct. at 1006.[2] Judged by those standards the instant action unquestionably qualifies as a suit against the sovereign since, as previously noted, the claim for back pay and allowances alone entails the possible payment of some $135,000.

■ There are, however, two well-recognized instances where suits for specific relief against public officers are not considered to be against the sovereign. In these two instances the sovereign's consent to be sued is not required and the defense of sovereign immunity is unavailable. Thus, the actions of a public officer can be made the basis of a suit for specific relief against the officer as an individual if, but only if, (1) the officer's action is beyond his statutory powers, or (2) if within those powers, the powers themselves or the manner in which they are exercised are constitutionally void.[3] Plaintiff, not unexpectedly, contends that the instant case falls within either or both of these exceptions, thereby attempting to hurdle the sovereign immunity barricade. In particular, Plaintiff contends that the discharge proceedings were so lacking in fundamental fairness as to render his separation from the Air Force violative of Due Process. He also asserts that the discharge was accomplished only by means of the violation of numerous statutory enactments and Air Force regulations.

■ It should at once become evident that a determination of the sovereign immunity issue requires a ruling on the ultimate questions in the suit. In order to avoid deciding a case on the merits under the guise of resolving the preliminary jurisdictional issues, the courts have adopted the procedure of accepting at face value, for jurisdictional purposes, the averments of the complaint unless they are so transparently insubstantial or frivolous as to afford no possible basis for jurisdiction, and of giving the averments thus accepted their natural jurisdictional consequences.[4] Plaintiff's allegations are certainly affirmative and explicit and it cannot be said that they are insubstantial or frivolous. Applying this technique and ac-

---

2. Accord, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) ; Gardner v. Harris, 391 F.2d 885 (5 CA 1968).

3. Dugan v. Rank, supra, at 621, 83 S.Ct. 999; Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) ; Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at 689–691, 69 S.Ct. 1457.

4. West Coast Exploration Co. v. McKay, 93 U.S.App.D.C. 307, 213 F.2d 582, cert. denied, 374 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 (1954), and cases cited therein at 592–594. Accord, Doehla Greeting Cards v. Summerfield, 97 U.S.App.D.C. 29, 227 F.2d 44 (1955). Cf. Delaware Valley Conservation Assoc. v. Resor, 269 F.Supp. 181 (MD Pa.1967), aff'd, 392 F. 2d 331 (3 CA 1968).

cepting the averments of the complaint as true, for jurisdictional purposes only, it follows that the case sub judice is not against the United States, but rather one to compel the Secretary of the Air Force to perform a clear legal duty. Accordingly, the defense of sovereign immunity is not available and the jurisdictional objection based thereon must fail.

The defendant's second and more substantial jurisdictional objection is premised on the notion that insofar as the instant case represents a claim for monetary relief, the court is without jurisdiction to grant such relief by reason of the fact that the amount claimed exceeds $10,000. Pointing to the Tucker Act, (28 U.S.C. Sec. 1346(a) (2)), defendant argues that exclusive jurisdiction of this cause is lodged in the Court of Claims.

In assaying this contention the initial inquiry must be to what extent, if at all, this case represents a claim for monetary relief. The pivotal theory around which Plaintiff's entire case revolves is that his separation from the Air Force was so fundamentally defective as to be a complete legal nullity. Plaintiff, thus, is challenging the *fact* of discharge rather than merely its character. Inherent in this theory is the contention that Plaintiff has been, in contemplation of law at least, an officer on active duty status at all times since December, 1960. If this theory is accepted and carried to its logical consequence, as Plaintiff insists it must, the result would be that Carter is entitled to full pay and allowances from the last day of 1960 to the present. Hence, by virtue of Plaintiff's theory of the case, a decision by this court concerning the validity of the discharge necessarily involves an adjudication of the claim for back wages.[5] This view of the case is buttressed by the nature of the relief prayed for. In paragraph "19" of the prayer for judgment, as amended, Carter asks for an order:

> "* * * permanently enjoining the defendant from * * * withholding * * * any privilege, benefit, right, property, pay, and allowance to which Plaintiff might lawfully be entitled as an incident to his military office, grade and status."

Under the circumstances the court must conclude that the claim for back pay and allowances constitutes the keystone of this entire law suit. That the complaint is cast in terms of a declaratory judgment action cannot alter the fact that what in substance is sought is a money judgment against the United States for back pay in excess of $10,000.[6]

Simply stated the issue now becomes whether this court has jurisdiction of such a cause of action.

If, as the defendant contends, jurisdiction of the case sub judice is available only under the aegis of Section 1346, Title 28, U.S.C., there can be no doubt that this court is without power to resolve the controversy. Prior to 1964, Subsection (d) (2) of Section 1346 barred the district courts from adjudicating any civil action brought by an officer of the United States to recover fees, salary or compensation. See, e.g., Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952). At that time the Court of Claims had exclusive jurisdiction of such cases regardless of the amount claimed. In 1964, however, Subsection (d) (2) was deleted by Congress and as a consequence Subsection (a) (2) is now applicable to cases involving claims by officers for back pay. The present status of the law is that the district courts have concurrent jurisdiction with the Court of Claims over such cases, *provided* that the amount of the

---

5. Interestingly, Professor Meador describes this theory as being the typical one in a suit in the Court of Claims. Meador, Judicial Determinations of Military Status, 72 Yale L.J. 1293, 1299 (1963).

6. See, e. g., Gordon v. Shoup, 115 U.S.App. D.C. 32, 316 F.2d 683 (1963) ; Powers v. United States, 218 F.2d 828 (7 CA 1954) ; Almour v. Pace, 90 U.S.App.D.C. 63, 193 F.2d 699 (1951).

claim does not exceed $10,000.[7] Since both parties admit that the claim in the instant case does exceed $10,000, it would seem that the Court of Claims is the only forum having jurisdiction unless there is some jurisdictional fount other than Section 1346.[8]

In rejoinder the Plaintiff asserts that Section 1361, Title 28, U.S.C., provides the requisite alternate jurisdictional basis. In disarmingly simplistic language Section 1361 provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Using this statute as his starting point, Carter argues that 10 U.S.C. Sec. 1552 imposes on the Secretary of the Air Force an absolute duty to correct an applicant's military records where this is necessary to "correct an error or remove an injustice." Since, Plaintiff continues, his entitlement to correction of his military records is unequivocally demonstrated by the pleadings and stipulation, and since the Secretary wrongly refused to grant such relief, an action will lie under Section 1361 to remedy the defendant's abuse of discretion.[9]

■ Assuming arguendo that Plaintiff's discharge was illegal, the argument recited by Plaintiff is incontrovertible as far as it goes. Ashe v. McNamara, 355 F.2d 277 (1 CA1965), teaches that Section 1361 gives the district courts jurisdiction to review and correct administrative action taken pursuant to Section 1552 where it is alleged and proved that the discharge in question was a legal nullity. Accord, Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967); Smith v. United States Air Force, 280 F.Supp. 478 (ED Pa.1968).

On the basis of the foregoing authorities the court has jurisdiction but the Ashe, Van Bourg and Smith cases are not entirely dispositive since, unlike Carter, each involved plaintiffs who were challenging only the character of their discharges.[10] While Section 1361 con-

---

7. In discussing the purpose of the 1964 amendments to Section 1346 the Senate Report states:

"The purpose of this bill is to give U. S. district courts concurrent jurisdiction with the Court of Claims to hear civil actions or claims to recover fees, salary, or compensation for official services of officers or employees of the United States where the claim does not exceed $10,000 in amount." Senate Report No. 1390, 88th Cong., 2d Sess., U.S.Code Cong. and Admin.News, pp. 3254, 3255 (1964).

8. 28 U.S.C. Sec. 1491 quite clearly gives the Court of Claims jurisdiction over the case at bar.

9. It has been stipulated (Stipulation para. 68) that the Plaintiff submitted an application for correction of military records pursuant to Section 1552 to the appropriate authorities in proper form in December 1963. The pleadings on file indicate that the application was returned without any action being taken thereon on April 30, 1964. The reason given for returning the application was that the subject matter thereof was pending at that time before this court. It should be noted that nowhere does Section 1552 provide that the pendency of a law suit bars the Board of Correction of Military Records from acting on an application.

10. The distinction between challenges to the fact of discharge and those which concern only its character is by no means a fanciful one. When the fact of discharge is challenged and the court is asked to accomplish the plaintiff's de jure reinstatement into the armed services, serious problems regarding the doctrine of separation of powers are brought into play. See Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, 57 Col.L.Rev. 917 (1957). But see Meador, supra, at 1302–03.

Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Davis v. Stahr, 110 U.S.App.D.C. 383, 293 F.2d 860 (1961); Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852 (1961); and Olenick v. Brucker, 173 F. Supp. 493 (D.DC), vacated, 107 U.S. App.D.C. 5, 273 F.2d 819 (1959), are representative of those cases where only the character of the plaintiff's discharge was

fers jurisdiction as such, the question whether it authorizes this court to effect the Plaintiff's de jure reinstatement into the Air Force and to award him monetary relief in excess of $10,000 remains unanswered.

The courts that have construed Section 1361 have uniformly held that its sole function was merely to extend to all district courts the mandamus jurisdiction formerly exercised only by the District Court for the District of Columbia.[11] The same authorities also emphasize that the provision in question did not make any substantive change in the law of mandamus. The prevailing interpretation of Section 1361 was concisely summarized by Judge Connor in Dover Sand & Gravel, Inc. v. Jones, 227 F.Supp. 88 (D.N.H.1963), when he wrote:

"Therefore, if the plaintiff could not have obtained relief before the enactment of § 1361, he is in no better position now."

Id. at 90. The determinative issue, then, is whether under general principles of law mandamus provides an appropriate means for obtaining the relief prayed for in this case.

It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases.[12] Though it is a legal remedy, it is largely controlled by equitable principles and its issuance is a matter of judicial discretion.[13] Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. In connection with the last requirement, it is important to bear in mind that mandamus does not supersede other remedies, but rather comes into play where there is a want of such remedies. Admittedly the alternative remedy must be adequate, i.e., capable of affording full relief as to the very subject matter in question.[14]

After giving the matter careful study, I am constrained to hold that an alternate adequate remedy is available to the Plaintiff in the form of an action in the Court of Claims. Certain it is that 28 U.S.C. Sec. 1491 empowers the Court of Claims to declare a serviceman's discharge legally inoperative and to award him back pay when this is the

drawn into question. For the reasons noted above the court concludes that this genre of cases is not controlling on the case at bar. Cf. Robertson v. Chambers, 341 U.S. 37, 71 S.Ct. 547, 95 L.Ed. 726 (1951). But cf. Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236 (1964).

11. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10 CA), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966); White v. Administrator, 343 F.2d 444 (9 CA 1965); Smith v. United States, 333 F.2d 70 (10 CA 1964); Massachusetts v. Connor, 248 F.Supp. 656 (D.Mass.), aff'd per curiam, 366 F.2d 778 (1 CA 1966); Application of James, 241 F.Supp. 858 (SD NY 1965); Sprague Electric Co. v. Tax Court, 230 F.Supp. 779 (D.Mass.1964) aff'd, 340 F.2d 947 (1 CA 1965); Rose v. McNamara, 225 F.Supp. 891 (ED Pa. 1963); Seebach v. Cullen, 224 F.Supp. 15 (ND Cal.1963); McEachern v. United States, 212 F.Supp. 706 (WD SC), rev'd on other grounds, 321 F.2d 31 (4 CA 1963).

See also Senate Report No. 1992, 87th Cong., 2nd Sess., U.S.Code Cong. and Admin.News, p. 2784 (1962).

12. See, e. g., Ex Parte Collett, 337 U.S. 55, 72, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949); In re Watkins, 271 F.2d 771, 76 A.L.R.2d 1113 (5 CA 1959).

13. Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 373, 75 S.Ct. 845, 99 L.Ed. 1155 (1955); Laycock v. Hidalgo County Water Control & Improvement District, 142 F.2d 789, 155 A.L.R. 460 (5 CA), cert. denied, 323 U.S. 731, 65 S.Ct. 68, 89 L.Ed. 587 (1944).

14. Ex parte Republic of Peru, 318 U.S. 578, 584, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 544, 57 S.Ct. 855, 81 L.Ed. 1272 (1937).

case.[15] And, the court has, in fact, done just this a number of times.[16] In his brief Plaintiff suggests that he is entitled to a disability retirement. The Court of Claims may grant this type of relief.[17] Finally, Carter prays for a declaration that he was promoted to the rank of Colonel on November 24, 1967. This relief is likewise available in the Court of Claims in the proper circumstances.[18] Thus, even the most cursory examination of the foregoing authorities evidences that not only is an adequate remedy available to Plaintiff in the Court of Claims, but also that that court has acquired considerable expertise in this type of litigation. This court would do well to defer to such expertise. The Supreme Court's comments concerning the Court of Claims are instructive in this regard:

> "The cases heard by the Court have been as intricate and far-ranging as any coming within the federal-question jurisdiction * * *.
>
> "Indeed there is reason to believe that the Court of Claims has been constituted as it is precisely to the end that there may be a tribunal specially qualified to hold the Government to strict legal accounting. From the beginning it has been given jurisdiction only to award damages, not specific relief * * *. But far from serving as a restriction, this limitation has allowed the Court of Claims a greater freedom than is enjoyed by other federal courts to inquire into the legality of governmental action. * * * *"

Glidden Co. v. Zdanok, 370 U.S. 530, 556–557, 82 S.Ct. 1459, 1476, 8 L.Ed. 2d 671 (1962).

The court therefore concludes that it would be improper to grant relief in this case by way of mandamus because the Plaintiff has another adequate remedy.

A second factor militating against issuance of a mandamus is that although Section 1361 gives this court jurisdiction to grant such relief, to do so would have the undesirable effect of undermining the jurisdiction of the Court of Claims. The court has heretofore held that although the complaint in the case sub judice is cast in terms of an action for mandamus and a declaratory judgment, the substance of the matter is that the case is essentially one for a money judgment against the United States in excess of $10,000. The court has also concluded that the 1964 amendments to Section 1346 vested the Court of Claims with exclusive jurisdiction of such causes of action.[19] In this context the Court of Claims decision in Edgar v. United States, 171 F.Supp. 243, 145 Ct. Cl. 9 (1959), is highly significant. In Edgar the court held that the doctrine of collateral estoppel applied as between the Court of Claims and the district court in litigation growing out of an allegedly invalid discharge. This ruling has been consistently followed.[20] In the instant case a finding that Plaintiff's discharge was illegal is a prerequisite

15. Note 8 supra; see Meador, supra, at 1229–1302.

16. See, e. g., Conn v. United States, 376 F.2d 878, 180 Ct.Cl. 120 (1967); Shaw v. United States, 357 F.2d 949, 174 Ct.Cl. 899 (1966); Clackum v. United States, 296 F.2d 226, 148 Ct.Cl. 404 (1960); Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958); Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650 (1947).

17. See, e. g., King v. United States, 390 F.2d 894, 182 Ct.Cl. 631 (1968); Frederick v. United States, 280 F.2d 844, 150 Ct.Cl. 769 (1960); Betts v. United States, 172 F.Supp. 450, 145 Ct.Cl. 530 (1959); Friedman v. United States, 158 F.Supp. 364, 141 Ct.Cl. 239 (1958); Register v. United States, 128 F.Supp. 750, 131 Ct.Cl. 98 (1955).

18. See, e. g., Caddington v. United States, 178 F.Supp. 604, 147 Ct.Cl. 629 (1959); Egan v. United States, supra. Cf. Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957).

19. Supra at 771–772.

20. See, e. g., King v. United States, supra, and cases cited therein at 907 of 390 F.2d.

to granting the relief he seeks. Because of the interaction between the fact that the case sub judice is essentially one for money damages in excess of $10,000 and the fact that collateral estoppel is available, if this court were to find for Plaintiff it would be deciding indirectly a claim over which the Court of Claims has exclusive jurisdiction. The statutory scheme devised by Congress for the resolution of money claims against the United States is the product of continuous and careful consideration. I am not disposed to allow this scheme to be undermined or circumvented through the mechanism of Section 1361 mandamus jurisdiction. The court believes that in cases of the type now under consideration the monetary limitation imposed on its jurisdiction by Section 1346 must also be held to apply to a mandamus proceeding brought pursuant to Section 1361.[21]

In summary, though jurisdiction of the instant case is present pursuant to Section 1361, the court is of the opinion that it should decline to exercise its jurisdiction for the aforementioned reasons.

Clackamas County, Oregon v. McKay, 94 U.S.App.D.C. 108, 219 F.2d 479 (1954), vacated on other grounds, 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244 (1955), and Miguel v. McCarl, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901 (1934), are urged upon the court by the Plaintiff in support of his contention that mandamus may lie to compel an officer of the United States to pay over a sum of money regardless of the amount. Plaintiff's reliance is misplaced. In contrast to the situation which obtains in the case at bar, both Clackamas County and Miguel involved claims for a liquidated amount. In the instant case, the amount due Carter, if any, is dependent on a number of variables, to-wit, whether he is entitled to a de jure reinstatement at all; whether he is to be restored to flying status; and the amount of money which adequately represents the value of the numerous fringe benefits accorded all servicemen.[22]

The Supreme Court's decisions in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), and Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963),[23] are cited by Plaintiff in support of his position. The court finds these cases to be inapposite for two reasons. First, none discussed, or for aught that appears even considered, the question of the district court's jurisdiction vis-a-vis that of the Court of Claims and the limitations thereon.[24] Second, in the Service and Vitarelli cases, serious First Amendment problems of a sort clearly not present in the instant case were lurking beneath the surface.

The court is likewise not persuaded that the decisions in Taylor v. United States Civil Service Commission, 374 F.2d 466 (9 CA 1967); Veatch v. Resor, 266 F.Supp. 893 (D.Colo.), vacated, 388 F.2d 310 (10 CA 1967), and Coledanchise v. Macy, 265 F.Supp. 154 (DSC 1967), are controlling on the case at bar. Each of these decisions involved an action by a *civilian* employee of a branch of the armed services to have his dismissal set aside. Though the Veatch case was the

---

21. Cf. Almour v. Pace, supra; Marshall v. Crotty, 185 F.2d 622 (1 CA 1950). See also Meador, supra, at 1321–1322.

22. The difficulty involved in determining the amount due in cases of this type is illustrated by the discussion in Meador, supra, at 1306–1312.

23. Vacating, 111 U.S.App.D.C. 294, 296 F.2d 416 (1961).

24. Cf. Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964), where a separate action to recover back pay was instituted in the Court of Claims after the Supreme Court held that the plaintiff's dismissal was illegal. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). A noteworthy fact in the Greene case was that, as here, the amount due the plaintiff was uncertain.

only one to recognize it, the Administrative Procedure Act (5 U.S.C. Sec. 701 et seq.) furnishes the proper jurisdictional basis for actions of this type. Plaintiff, however, can derive no comfort from the provisions of the Administrative Procedure Act since the authorities are in accord that the act does not furnish an independent grant of jurisdiction in cases of this type. Aktiebolaget Bofors v. United States, 90 U.S.App. D.C. 92, 194 F.2d 145, 149 (1951); Almour v. Pace, 90 U.S.App.D.C. 63, 193 F.2d 699, 701 (1951); Massachusetts v. Connor, 248 F.Supp. 656, 658 (D.Mass.), aff'd per curiam, 366 F.2d 778 (1 CA 1966).

■ As a final matter the court would point out that in its opinion the case sub judice is not an appropriate one for the utilization of the declaratory judgment procedure as regards any aspect thereof, monetary or otherwise. The granting of a declaratory judgment rests within the discretion of the court. Public Affairs Associates v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). The same two factors which influenced the court to decline to exercise its mandamus jurisdiction under Section 1361 are equally persuasive on the issue of whether a declaratory judgment should be granted.[25]

There remains to be determined only the issue of what disposition should be made of the case. The court will adopt the defendant's suggestion that the case be dismissed *without* prejudice so that Plaintiff may prosecute his case now pending before the Court of Claims.[26] The dismissal will be without prejudice so that Plaintiff may return to this court for additional relief if, for some unexpected reason, this proves necessary in the future.

The clerk will notify counsel to draft and submit an appropriate dismissal order.

25. See supra at 772–773.

26. A dismissal rather than a stay is required by Section 1500, Title 28, U.S.C.,