ASSOCIATION OF COMMUNITY OR-GANIZATIONS FOR REFORM NOW (ACORN) and Philadelphia Welfare Rights Organization (WRO), and Delaware Valley Citizens' Council for Clean Air, on behalf of themselves, their members, and all others similarly situated

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA), Joseph T. Mack, Richard S. Page, Urban Mass Transit Administration (UMTA), United States Department of Transportation (DOT), and Brock Adams.

Civ. A. No. 78–4094.

United States District Court,
E. D. Pennsylvania.

Dec. 21, 1978.

Steven P. Hershey, Irv Ackelsberg, Carol S. Sanders, Community Legal Services, Inc., Michael Churchill, Public Interest Law Center of Philadelphia, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, U. S. Atty., Alexander Ewing, Jr., Asst. U. S. Atty., Philadelphia, Pa., Trudy B. Levy, Attorney-Advisor, Urban Mass Transp. Admin., Washington, D. C., for defendants; Robert W. Batchelder, Asst. Chief Counsel, Urban Mass Transp. Admin., Washington, D. C., Nancy A. Greene, Regional Counsel, Urban Mass Transp. Admin., Philadelphia, Pa., Lewis H. Van Dusen, Jr., P. Alan Bulliner, Drinker, Biddle & Reath, Philadelphia, Pa., for Southeastern Pennsylvania Transp. Authority and Joseph T. Mack, of counsel.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs in this action seek injunctive relief in connection with a fare increase which the defendant, Southeastern Pennsyl-

vania Transportation Authority (SEPTA) has scheduled to become effective on January 1, 1979. Specifically, the plaintiffs request the following relief from this Court: (1) a declaratory judgment that certain actions of the United States Department of Transportation (DOT), the Urban Mass Transportation Administration (UMTA) and SEPTA were illegal; (2) preliminary and permanent injunctions preventing a fare increase proposed by SEPTA until it has reported full consideration of alternatives and possible adverse economic, social, and environmental impact of its operating expenses (the project) and the fare increase; (3) preliminary and permanent injunctions directing that UMTA forthwith review the Fiscal Year 1979 SEPTA application for federal funds and forthwith assure full consideration of alternatives and possible adverse economic, social, and environmental impact of the project and of the fare increase; and (4) a permanent injunction requiring the Secretary of Transportation to promulgate regulations prohibiting implementation of a proposed fare increase until after the Secretary has considered the applicant's report on the effects of such fare increase.

Defendants have moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. The defendants claim that this Court lacks jurisdiction because the federal claims do not present a justiciable case or controversy under Article III of the United States Constitution in that there is no final agency action ripe for review.[1] Briefs were submitted and oral argument was held on December 15, 1978. For the reasons hereinafter set forth, we have determined that this Court lacks subject matter jurisdiction over plaintiffs' federal claims and that defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) should therefore be granted.

The plaintiffs are the Pennsylvania Association of Community Organizations for Reform Now (ACORN), the Philadelphia Welfare Rights Organization (WRO), and the Delaware Valley Citizens' Council for Clean Air (DVCCCA), and they bring this action on their own behalf and on behalf of their members and all others similarly situated pursuant to Fed.R.Civ.P. 23(a)(b)(2). Plaintiffs allege injury to their health from the deterioration of air quality that has occurred as a result of each recent SEPTA fare increase and that they will suffer greater injury if the proposed fare increase becomes effective and air quality then deteriorates further. Plaintiffs also represent that the fare increase will cause them economic injury and will further restrict the mobility of low-income members of the class, thereby limiting their access to jobs, doctors, and other essential services.

The plaintiffs allege that jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 as an action arising under an Act of Congress and under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* They allege further that the amount in question is greater than $10,000.

Plaintiffs allege five causes of action in their Amended Complaint. First, plaintiffs allege that SEPTA's report submitted pursuant to Section 5(i)(1) of the Urban Mass Transportation Act (the UMT Act), 49 U.S.C. § 1604(i)(1), failed to describe the possible adverse effects of the project or its elements (Amended Complaint, Paragraph 43), and that SEPTA's certification submitted with its grant application pursuant to Section 5(i) of the UMT Act is meaningless and fails to comply with the provisions of said section (Amended Complaint, Paragraph 46). Second, plaintiffs allege that DOT and UMTA have failed to consider, and the Secretary of DOT has failed to assure that SEPTA considered, pursuant to

---

1. An alternative basis for dismissal asserted by the defendants in their Rule 12(b)(1) motion is that plaintiffs lack standing to sue on each of the federal claims. In view of our decision to grant defendants' Rule 12(b)(1) motion because

there has been no final agency action ripe for review, we need not address the issue of plaintiffs' standing. We also need not address the Rule 12(b)(6) motions to dismiss.

Section 5(h)(2) of the UMT Act, 49 U.S.C. § 1604(h)(2), the possible adverse economic, social or environmental effects of the project and alternatives to it (Amended Complaint, Paragraphs 51, 53). Third, plaintiffs allege that no consideration has been given by SEPTA, UMTA or DOT, pursuant to Section 5(i)(3)(C) of the UMT Act, 49 U.S.C. § 1604(i)(3)(C), to the effect on energy conservation or to the economic, environmental or social impact of SEPTA's scheduled fare increase (Amended Complaint, Paragraphs 57, 58). Fourth, plaintiffs allege that UMTA's continued funding of SEPTA's Section 5 application is major federal action significantly affecting the environment, within the meaning of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. and that neither SEPTA, UMTA nor DOT has prepared an environmental impact statement as required by 42 U.S.C. § 4332(C) (Amended Complaint, Paragraphs 60, 61). And fifth, plaintiffs allege that the action of SEPTA in raising fares without considering economic, social, and environmental impact and alternatives is such an abuse of discretion as to violate the Metropolitan Transportation Authorities Act, 66 P.S. § 2004(d)(9) and that SEPTA's failure to comply with federal funding conditions is a manifest and flagrant abuse of discretion in that it jeopardizes SEPTA's right to receive federal monies essential to SEPTA's continued operation.

A careful analysis of the plaintiffs' Amended Complaint reveals that the plaintiffs' claim of federal question jurisdiction in connection with the first three causes of action alleged by the plaintiffs is based upon the defendants' alleged failure to comply with Sections 5(h)(2) and 5(i) of the UMT Act, 49 U.S.C. § 1604(h)(2), (i). In connection with these first three alleged causes of action, the Amended Complaint claims (a) that although SEPTA submitted a report and certification with its grant application, the report and certification do not comply with the provisions of Section 5(i); (b) that the Secretary has not assured that the effects of the project and alternatives to it were fully considered as provided

in Section 5(h)(2); and (c) that the Secretary has not received assurance from SEPTA in connection with the fare increases as provided in Section 5(i)(3).

Section 5(h)(2) of the UMT Act, 49 U.S.C. § 1604(h)(2), provides:

(h) . . . .

(2) In approving any project under this section, the Secretary shall assure that possible adverse economic, social, and environmental effects relating to the proposed project have been fully considered in developing the project, and that the final decisions on the project are made in the best overall public interest, taking into consideration the need for fast, safe, and efficient transportation, public services, and conservation of environment and natural resources, and the costs of eliminating or minimizing any such adverse effects, including—

(A) air, noise, and water pollution;

(B) destruction or disruption of manmade and natural resources, esthetic values, community cohesion, and the availability of public facilities and services;

(C) adverse employment effects, and tax and property value losses;

(D) injurious displacement of people, businesses, and farms; and

(E) disruption of desirable community and regional growth.

Section 5(i) of the UMT Act, 49 U.S.C. § 1604(i), provides:

(i) Upon submission for approval of a proposed project under this section, the Governor or the designated recipient of the urbanized area shall certify to the Secretary that he or it has conducted public hearings (or has afforded the opportunity for such hearings) and that these hearings included (or were scheduled to include) consideration of the economic and social effects of such project, its impact on the environment, including requirements under the Clear Air Act, the Federal Water Pollution Control Act, and other applicable Federal environmental statutes, and its consistency with the

goals and objectives of such urban planning as has been promulgated by the community. Such certification shall be accompanied by (1) a report which indicates the consideration given to the economic, social, environmental, and other effects of the proposed project, including, for construction projects, the effects of its location or design, and the consideration given to the various alternatives which were raised during the hearing or which were otherwise considered, (2) upon the Secretary's request, a copy of the transcript of the hearings, and (3) assurances satisfactory to the Secretary that any public mass transportation system receiving financial assistance under such project will not change any fare and will not substantially change any service except (A) after having held public hearings or having afforded an adequate opportunity for such hearings, after adequate public notice, (B) after having given proper consideration to views and comments expressed in such hearings, and (C) after having given consideration to the effect on energy conservation, and the economic, environmental, and social impact of the change in such fare or such service. (Emphasis added).[2]

A reading of the above quoted Section 5(h)(2) of the UMT Act makes it abundantly clear that this section sets forth the criteria to be used by the Secretary in making his determination as to whether an applicant should be given a federal urban mass transit grant pursuant to Section 5 of the UMT Act. The Amended Complaint states that SEPTA has filed an application for such a grant and that the application is presently pending and has not been acted upon by the Secretary. In addition, the Complaint does not set forth any action taken by the agency in connection with SEPTA's application for such a grant, but does allege that the Secretary has not as

yet acted upon SEPTA's application. Furthermore, the above quoted Section 5(i) of the UMT Act clearly sets forth the certification, the report and the assurances which must be furnished by the applicant in connection with its application for a federal urban mass transit grant. The Amended Complaint states that SEPTA has filed the certification and report but has not furnished assurances pursuant to the recent amendment to Section 5(i) of the UMT Act signed into law on November 6, 1978. It is therefore obvious from the Amended Complaint that the agency in this case, UMTA, has not as yet taken action upon SEPTA's application. This Court must therefore conclude that there has been no final agency action in connection with the first three causes of action based upon Sections 5(h)(2) and 5(i) of the UMT Act.

The law is clear that this Court is without jurisdiction to review matters that are not ripe for adjudication. As the Supreme Court held in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), a matter is not ripe for adjudication unless a court finds that the challenged agency action is "final action" within the meaning of Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 704. In *Abbott Laboratories*, the Supreme Court said:

Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148–49, 87 S.Ct. at 1515.

The APA, 5 U.S.C. § 704 provides:[3]

---

2. The underlined portion of Section 5(i) quoted above was enacted as an amendment to the UMT Act, signed into law on November 6, 1978.

3. The Administrative Procedure Act is not an independent grant of subject matter jurisdic-

tion. As the Supreme Court stated in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

Furthermore, even where there has been final agency action, the court's review must be as stated in 5 U.S.C. § 706:

The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

■ There are two district court cases which hold that until UMTA makes a final decision on an application for a federal urban mass transit grant, there is no final agency action, the dispute is not ripe for adjudication, and the court lacks jurisdiction. *Hudson v. Washington Metropolitan Area Transit Authority,* Civil No. 75–0360 (D.D.C., July 8, 1976) (Ritchie, J.); *Hudson Transit Lines v. Brinegar,* Civil No. 74–648 (D.N.J., July 25, 1974) (Whipple, J.). In the latter case, the court observed:

In this matter, the Secretary [of Transportation] has not made a determination as to [the applicant's] preliminary application. The mere receipt of the preliminary application by the Secretary is not reviewable by this Court nor are the intra departmental discussions, relevant to this application, which must certainly be taking place with [sic] the Department of Transportation reviewable at this time. Therefore, since there has been no final decision as required by 5 U.S.C. 704, this Court presently lacks jurisdiction to grant the plaintiff the sought after relief. Therefore, the action as to the Federal defendants will be dismissed.

As stated in 13 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 3532, at 260 (1975): "As a general principle, it can be readily agreed that courts should await some degree of finality before intruding into ongoing processes of general rulemaking or specific enforcement."

We conclude therefore that as to the first three causes of action which claim federal question jurisdiction based upon Sections 5(h)(2) and 5(i) of the UMT Act, a review of the Amended Complaint shows that there has not been a final agency action, and pursuant to the law heretofore discussed, this Court will grant the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

■ Although this Court arrived at this determination solely on the basis of the allegations in the Amended Complaint, such a conclusion is buttressed by an examination of the affidavit of Frank K. Gimmler, Regional Director, Urban Mass Transportation Administration, which was filed by the defendants. His affidavit, which is uncontroverted, states UMTA received SEPTA's grant application, including the report and certification (Affidavit, Paragraphs 3, 6, 7, 8), that UMTA has asked SEPTA to provide, but has not yet received, the assurance called for by the recently enacted Section 5(i)(3) and that "[i]f and when the assurance is received, UMTA will review SEPTA's entire Section 5 application and make a final determination regarding compliance with all statutory requirements." (Affidavit, Paragraph 11). Thus, it is abundantly clear that the Secretary, acting through UMTA, has not yet reviewed the application of SEPTA nor determined whether the various components of the application are in conformity with the UMT Act. The affidavit further states that UMTA anticipates that it will be able to make a final decision on SEPTA's application during the month of January, 1979. (Affidavit, Paragraph 11). Our Third Circuit has made it clear that in connection with a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may consider an affidavit such as that filed by the defendants. In *Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977), Judge Hunter stated:

The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different [from that under a Rule 12(b)(6) motion to dismiss]. . . . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. (footnote omitted).

■ In their fourth cause of action, the plaintiffs incorporate the allegations of the Amended Complaint and allege that SEPTA's application for a federal urban mass transit grant is major federal action and that the defendants have not prepared an environmental impact statement as required by NEPA. Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), provides:

The Congress authorizes and directs that, to the fullest extent possible: . . (2) all agencies of the Federal Government shall—

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

As we heretofore pointed out in our discussion of the first three causes of action, it is abundantly clear that there has not as yet been any final action on SEPTA's application for a federal urban mass transit grant. The question as to whether SEPTA's application and UMTA action thereon is a major federal action requiring an environmental impact statement pursuant to NEPA is a determination which must initially be made by the federal defendants. The Amended Complaint does not allege that any such determination has been made, nor does it allege that any "recommendation or report" has been made by the federal defendants. The matter is not ripe for adjudication since there has not been final agency action. We shall therefore apply to the plaintiff's fourth cause of action the well recognized general rule that courts have no jurisdiction in NEPA cases until after the agency's decision to act. As the Supreme Court recently stated in *Kleppe v. Sierra Club,* 427 U.S. 390, 406 n. 15, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), "the time at which a court enters the process is when the report or recommendation on the proposal is made, and someone protests either the absence or the adequacy of the final impact statement. This is the point at which an agency has reached sufficient maturity to assure that judicial intervention will not hazard unnecessary disruption." This is the same principle of law which we heretofore discussed in connection with the plaintiffs' first three causes of action; that is, the dispute is not ripe for adjudication. The Court will therefore grant the defendants' Rule 12(b)(1) motion to dismiss the plaintiffs' fourth cause of action for lack of subject matter jurisdiction.

■ In connection with the plaintiffs' four causes of action heretofore discussed, the plaintiffs not only have requested injunctive relief but also have asked for a declaratory judgment. Since we have determined that the plaintiffs' four causes of action are not ripe for adjudication, there is no jurisdictional basis for the declaratory

relief requested. *Pharmaceutical Manufacturers Ass'n v. Gardner*, 127 U.S.App.D.C. 103, 381 F.2d 271 (1967); *Continental Bank and Trust Co. v. Martin*, 303 F.2d 214 (D.C. Cir. 1962).

■ In addition, the plaintiffs have requested that UMTA be directed to forthwith review SEPTA's Section 5 application. The Amended Complaint contains no allegations, however, of any unreasonable delay or due process violation. As stated in *Wright v. Califano*, 587 F.2d 345, (7th Cir. 1978): "Since administrative efficiency is not a subject particularly suited to judicial evaluation, the courts should be reluctant to intervene in the administrative adjudication process, absent clear congressional guidelines or a threat to a constitutional interest." Although 28 U.S.C. § 1361 grants jurisdiction to United States district courts over actions in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff, it is well settled that a requisite for jurisdiction on the basis of § 1361 is an allegation that the defendant officer or employee of the United States owes the plaintiff a legal duty which is a specific, plain, ministerial act "devoid of the exercise of judgment or discretion." *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 25–26 (3d Cir. 1975); *Spock v. David*, 469 F.2d 1047, 1050 (3d Cir. 1972); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt. We are therefore without jurisdiction to order UMTA to act promptly.

■ Having determined that the plaintiffs' first four causes of action must be dismissed for lack of subject matter jurisdiction, we now consider plaintiffs' fifth and final cause of action. It is clearly a pendent state law claim, alleging that the action of SEPTA in raising fares constitutes an abuse of discretion in violation of Section 4(d)(9) of the Metropolitan Transportation Authorities Act, 66 P.S. § 2001 *et seq.* Section 4(d)(9) of this Act, 66 P.S. § 2004(d)(9), provides in part:

Any person aggrieved by any rate or service or change of service fixed by the authority may bring an appeal against the authority in the court of common pleas of any county in the metropolitan area in which the charge, service or change of service shall be applicable, for the purpose of protesting against any such charge, service or change of service: Provided, however, That the grounds for such suits shall be restricted to a manifest and flagrant abuse of discretion or an error of law; otherwise, all such actions by the authority shall be final. Whenever two or more appeals shall be brought against the same action of the authority, exclusive jurisdiction for the determination thereof shall be vested in the first such court to receive such an appeal, and all other courts receiving subsequent appeals against the same action shall transfer such appeals to the said first court. Upon the finding of an error of law or a manifest and flagrant abuse of discretion, the court shall issue an order setting forth the abuse of error and returning the matter to the authority for such further action as shall be not inconsistent with the findings of the court. No appeal from the action of the authority or from the decision of the court of common pleas shall act as a supersedeas, except when taken by the authority or any county or municipality, or, in other cases, when specially granted after a finding that irreparable and extraordinary harm will result. The courts shall give priority to all such appeals and no bond shall be required of any party instituting such an appeal under the provisions of this section.

It appears therefore that an appeal procedure to the court of common pleas is specifically provided in the state statute.

Federal courts nave the power to adjudicate claims based on state law if there is a federal claim of sufficient substance to confer subject matter jurisdiction on the court.

*Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir. 1976). However, as stated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), if the federal claims are dismissed before trial, the state claims should also be dismissed. We, therefore, shall decline to exercise jurisdiction over plaintiffs' state law claim.

Accordingly, an Order will be entered granting the defendants' motions to dismiss the alleged federal claims for lack of subject matter jurisdiction and dismissing the pendent state law claim.